UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PETER JOHN AXTMAN,<br><br>        Petitioner,<br><br>v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security Administration,<br><br>        Respondent. | Case No. 2:19-CV-00194-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Before the Court is Petitioner Peter John Axtman's Petition for Review of the

Respondent's denial of social security benefits, filed May 28, 2019. (Dkt. 1.) The Court

has reviewed the Petition, the Answer, the parties' memoranda, and the administrative

record (AR), and for the reasons that follow, will remand the decision to the

Commissioner of Social Security Administration (Commissioner)[1] for further

administrative proceedings.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for a period of disability and disability insurance

---

[1] Andrew Saul was sworn in as Commissioner on June 17, 2019, and is the named Respondent. 42 U.S.C. Section 405(g).

benefits alleging disability beginning December 10, 2013.[2] Petitioner, age 52 at the time of his alleged onset date, previously worked as a construction worker, foreman, and supervisor carpenter. Petitioner alleges disability due to neck and back pain, left scapular dyskinesia,[3] and right arm pain. The application was denied initially and on reconsideration.

A hearing was conducted on September 23, 2015, before Administrative Law Judge (ALJ) Mark Kim. After hearing testimony from Petitioner and a vocational expert, the ALJ issued a decision finding Petitioner not disabled on November 13, 2015. (AR 14.) The Appeals Council declined review and the case was appealed to the Court. *Axtman v. Berryhill*, Civil No. 2:16-cv-00372-CWD (D. Idaho August 24, 2016). Pursuant to the stipulation of the parties, the Court entered an order remanding the case to the Commissioner under sentence four of 42 U.S.C. § 405(g). (AR 304-306.) The Appeals Council vacated the November 13, 2015 decision and remanded the case to the ALJ with instructions. (AR 312-313.)

On remand, ALJ Kim held a second hearing on April 4, 2018. Following testimony by Petitioner, medical expert Dr. Robert C. Thompson, and a second vocational expert, the ALJ issued a decision on May 31, 2018, finding Petitioner not disabled. (AR 239-249.) The Appeals Counsel denied Petitioner's request for review.

[2] Petitioner originally alleged an onset date of April 1, 2009, but later amended it to December 10, 2013. (AR 240.)

[3] Scapular dyskinesis, or scapular dysfunction, is abnormal mobility or function of the scapula. https://stanfordhealthcare.org/medical-conditions/bones-joints-and-muscles/scapular-dyskinesis.html.

Petitioner timely filed this action seeking judicial review of the ALJ's May 31, 2018 decision pursuant to 42 U.S.C. § 405(g). Petitioner challenges 1) whether the ALJ complied with the remand order, 2) the residual functional capacity (RFC) determination, and 3) the ALJ's consideration of his limited treatment history when evaluating his symptoms.

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making this determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on *post hoc* rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## ISSUES PRESENTED[4]

Petitioner raises the following issues as grounds for reversal and remand:

1.   Whether the ALJ complied with the Remand Order.

2.   Whether the RFC determination is supported by substantial evidence.

3.   Whether the ALJ erred in considering Petitioner's limited treatment history when evaluating his symptoms.

## DISCUSSION

**1.   Whether the ALJ Complied with the Remand Order**

Petitioner contends the ALJ erred by failing to follow the order remanding the case. (Dkt. 13.)

**A.   Legal Standard**

"[A]s a general principle, the United States Supreme Court has recognized that an administrative agency is bound on remand to apply the legal principles laid down by the reviewing court." *Samples v. Colvin*, 103 F.Supp.3d 1227, 1232 (D. Or. 2015) (quoting *Ischay v. Barnhart*, 383 F.Supp.2d 1199, 1213–1214 (C.D. Cal 2005)); *see also Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989) ("Deviation from the court's remand order in

---

[4] The Court addresses the issues in a different order than presented by Petitioner for organizational purposes.

the subsequent administrative proceedings is itself legal error subject to reversal on

further judicial review."). On remand, an ALJ errs by failing to follow the specific

instructions of the remanding court. *Mackey v. Berryhill*, Case No. 2:16-cv-01199-DWC,

2017 WL 695101 (W.D. Wash. Feb. 22, 2017) (citing *Samples*, 103 F.Supp.3d at 1231–

32); *Ischay*, 383 F.Supp.2d at 1214. In Social security administration cases,

> [w]hen a Federal court remands a case to the Commissioner for further
> consideration, the Appeals Council, acting on behalf of the Commissioner,
> may make a decision, or it may remand the case to an administrative law
> judge with instructions to take action and issue a decision or return the case
> to the Appeals Council with a recommended decision. If the case is
> remanded by the Appeals Council, the procedures explained in [20 C.F.R.]
> § 404.977 will be followed.

20 C.F.R. § 404.983. Under 20 C.F.R. § 404.977, when a case is remanded to the ALJ by

the Appeals Council, the ALJ "shall take any action that is ordered by the Appeals

Council and may take any action that is not inconsistent with the Appeals Council's

remand order." 20 C.F.R. § 404.977. *Mackey*, 2017 WL 695101, at *2.

### B.    Analysis

The District Court's April 20, 2017 order remanding the case directed the ALJ to

offer Petitioner an opportunity for a new hearing, further develop the record, and issue a

new decision. The order instructed that on remand, the ALJ must:

> 1. Consider all medical source opinions;
>
> 2. Provide specific reasoning for the weight given to opinion evidence,
> discussing the evidentiary basis for conclusions;
>
> 3. Include all "unrejected" work related limitations in the RFC finding; and
>
> 4. Further consider the Petitioner's ability to perform other work in the
> national economy with the assistance of testimony from a vocational expert

during the relevant period.

(AR 305-306.)

In compliance with the Court's order, the Appeals Council remanded the case to the ALJ for resolution of the following issues: 1) reassess the RFC and provide sufficient rationale supporting the sit/stand, neck, and fine and gross manipulation limitations, and 2) reassess the RFC and obtain supplemental vocational expert testimony regarding the limitations to Petitioner's neck and whether those limitations preclude an adjustment to other work. (AR 312.) The Appeals Council directed that upon remand, the ALJ was to: develop the record with requests for current medical records; expand the record and obtain additional evidence as warranted; obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from Petitioner's impairment, if necessary; give further consideration to Petitioner's maximum RFC and provide additional rationale with specific references to evidence of record in support of the assessed limitations; and, if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Petitioner's occupational base. (AR 313.)

Petitioner argues the ALJ erred on remand by not addressing the neck limitations found in the first RFC determination - that Petitioner should have no repetitive or frequent rotation, flexion, or extension of the neck. (Dkt. 13 at 6.) Respondent disagrees, arguing the ALJ obtained additional evidence and fashioned an RFC that is supported by substantial evidence as required on remand. (Dkt. 14.) For the reasons that follow, the Court finds the ALJ complied with the remand order.

On remand, the ALJ developed and expanded the record, obtained evidence from a medical expert and a second vocational expert, and reassessed the RFC limitations. The ALJ accurately summarized the existing medical records of Petitioner's treating physician, Jara McDonald, from April and May 2014, and the January 2014 physical consultative examination by physician Thomas R. Hull, both of which showed only mild degeneration in Petitioner's cervical spine. (AR 244-245.) The ALJ obtained new evidence from Dr. Thompson, a non-treating, non-examining medical expert. Dr. Thompson reviewed the record and concluded similarly to Drs. McDonald and Hull, testifying that the record with respect to Petitioner's cervical spine showed "multilevel mild disc bulges with C5, 6 left paracentral disc extrusion, pushing the cords up with no abnormal cord signal and no femoral narrowing." (AR 263.)

Relevant to Petitioner's complaints of neck pain, Dr. Thompson opined that Petitioner could lift and carry up to 10 pounds frequently and 11 to 20 pounds occasionally, but not anything higher "based on the overall record of the cervical spine issues." (AR 264.) The lift and carry restrictions testified to by Dr. Thompson are accounted for in the RFC's light work exertional level. 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). It was therefore not necessary for the ALJ to include additional neck limitations beyond those stated in the reassessed RFC. This was sufficient to satisfy the remand order.

Contrary to Petitioner's argument, the ALJ did not need to find "medical improvement" of Petitioner's neck on remand to omit the neck limitation contained in the

first RFC determination. (Dkt. 13 at 6.) On remand, the ALJ was directed to reassess the RFC and provide rationale supporting the limitations therein. (AR 312.) The ALJ did so here.[5] Accordingly, the Court finds the ALJ complied with the order on remand and the petition will be denied on this basis.

## 2.      Whether the RFC Determination is Supported by Substantial Evidence.

The ALJ found Petitioner had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; left scapular dyskinesia; and right-sided carpal tunnel syndrome. (AR 242.) Based on the limitations stemming from these impairments, the ALJ determined Petitioner retained the RFC to perform a reduced range of light work with certain delineated restrictions including, as relevant here, that he can frequently handle, finger, and feel objects with the right dominant hand. (AR 243.)

Petitioner argues the RFC determination of light work is not supported by substantial and competent evidence. (Dkt. 13.) Specifically, Petitioner argues the ALJ erred in evaluating the opinion of Dr. Thompson, a non-treating, non-examining medical expert, with regard to his hand limitations. The Court finds the ALJ erred in discrediting a portion of Dr. Thompson's opinion and that the error was not harmless.

### A.      Legal Standard

Residual functional capacity (RFC) is the most a person can do, despite their physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In determining a

---

[5] The Petitioner has not challenged whether the ALJ violated any other provision of the remand orders relating to opinion evidence. (AR 306) (directing the ALJ to "[p]rovide specific reasoning for the weight given to opinion evidence, discussing the evidentiary basis for conclusions.") The ALJ's consideration of the opinion evidence is, therefore, addressed later in this order.

claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96–8p; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. SSR 96–8p.

In making the RFC determination, an ALJ is required to evaluate every medical opinion in the record and assign a weight to each. 20 C.F.R. § 404.1527(c). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*, 759 F.3d at 1012.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quotation omitted). Where the opinion of a treating or examining physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1012.

In evaluating a medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the

source's specialization; and (6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.[6]

### B.    The ALJ Erred in Rejecting a Portion of Dr. Thompson's Opinion.

Petitioner argues the RFC finding that he could frequently handle, finger, and feel objects with his right dominant hand is not supported by substantial, competent evidence. (Dkt. 13.) Petitioner asserts the evidence in the record, namely the opinion of Dr. Thompson, shows that he is limited to only occasional handling with the right hand which precludes all work according to the testimony of the vocational expert. Respondent maintains the ALJ properly resolved the conflicting evidence in the record regarding Petitioner's abilities and limitations, and that the RFC is supported by substantial evidence. (Dkt. 14.)

During the hearing, Dr. Thompson provided an accurate account of the medical evidence in the record regarding Petitioner's right arm impairments. Dr. Thompson opined that Petitioner had the following upper extremity limitations: overhead reaching only occasionally for both upper extremities; the right upper extremity is restricted to reaching only frequently, handling "might be occasional," fingering and feeling frequently, and occasional pushing and pulling; and the left upper extremity is limited to frequently reaching, handling, fingering, feeling, and pushing and pull. (AR 265.)

The ALJ assigned substantial weight to Dr. Thompson's opinion, except for the

---

[6] The opinion evidence is evaluated pursuant to 20 C.F.R. § 404.1527 where, as here, Petitioner's claim was filed before March 27, 2017.

doctor's conclusion that Petitioner was limited to only *occasional* handling on the right, stating: "Therefore, except for his opinion that the claimant was limited to only occasional handling on the right, substantial weight is accorded [to] Dr. Thompson's assessment because of his experience, his familiarity with the Social Security disability evaluation criteria, and he had the claimant's entire record for review." (AR 247.) The ALJ provided no basis for rejecting the portion of Dr. Thompson's opinion regarding occasional handling on the right. Instead, the ALJ concluded, without explanation, that Petitioner could *frequently* handle, finger, and feel objects with his right hand. (AR 243.)

The Court finds the ALJ erred by failing to provide a specific and legitimate reason for rejecting Dr. Thompson's opinion that Petitioner was limited to only occasional handling on the right side. While Respondent offers several possible reasons for the ALJ to have rejected that portion of Dr. Thompson's opinion - conflicting evidence in the record, conflicting medical opinions, discrediting Petitioner's symptom statements - the ALJ's decision itself is devoid of any basis for having done so. (Dkt. 14.) The reasons set forth by Respondent could very well have been the basis for the ALJ's decision and those reasons may be sufficient to uphold the ALJ's decision. The Court cannot, however, speculate or guess at what the ALJ's reasoning may have been.

"[T]he decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)). The ALJ must, therefore, set forth the reasoning behind the decision in a way that allows for meaningful review. *Id.* A clear statement of the agency's

reasoning is necessary, because the decision to deny benefits can only be affirmed on the grounds invoked by the agency. *Id.* (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). The ALJ has failed to do so here. The Court therefore finds the ALJ erred in rejecting a portion of Dr. Thompson's opinion.

### C.   The ALJ's Error Was Not Harmless.

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant, "inconsequential to the ultimate nondisability determination," or "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less than ideal clarity." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1115 and *Alaska Dept. Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)). Determining whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Here, the ALJ's rejection of Dr. Thompson's opinion regarding Petitioner's right hand limitations was not inconsequential to the ultimate nondisability determination. The ALJ specifically inquired of the vocational expert concerning whether jobs existed for a hypothetical person with Petitioner's limitations who could only occasionally handle objects with the dominant right hand. (AR 278-279.) The vocational expert testified that no such jobs existed and all of the jobs identified require frequent handling. (AR 278-

279.) The ALJ's conclusion that Petitioner retained the RFC to frequently, as opposed to occasionally, handle on the right was therefore determinative of whether jobs exist in the national economy that Petitioner could perform with the RFC for unskilled light work.

Further, the ALJ's reasoning cannot be reasonably discerned. The Court cannot review whether the ALJ provided sufficient reasons for rejecting Dr. Thompson's opinion where, as here, the ALJ never identified or explained his basis for doing so. This "falls short of meeting the ALJ's responsibility to provide "a discussion of the evidence" and "the reason or reasons upon which" his adverse determination is based." *Treichler*, 775 F.3d at 1103 (quoting 42 U.S.C. § 405(b)(1)). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Id.* The Court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." *Id.*

The discussion of the record in the ALJ's decision and the existence of evidence in the record supporting the RFC are not sufficient bases upon which the Court can surmise a proper basis for the ALJ to have rejected Dr. Thompson's opinion. "A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492; *see also Marsh*, 792 F.3d at 1172 (a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ"). Rather, the Court is "constrained to review the reasons the ALJ asserts.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). Because the ALJ did not state the basis for rejecting a portion

of Dr. Thompson's opinion, remand is necessary. The petition will be granted on this basis.

Petitioner's request to remand for an award of benefits, however, will be denied. "'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020)).

Here, the record is not fully developed and the opinion of Dr. Thompson, if credited as true, does not require a finding of disability. *Garrison*, 759 F.3d at 1020. The appropriate remedy is to remand for further administrative proceedings to allow the ALJ to articulate his reasons for rejecting the portion of Dr. Thompson's opinion regarding Petitioner's ability to handle on the right side and, if necessary, reevaluate the RFC

determination.

**3.      Whether the ALJ Erred In Considering Petitioner's Limited Treatment History When Evaluating His Symptoms.**

The ALJ found that Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Specifically, the ALJ pointed to the objective medical evidence, limited course of treatment, and activities of daily living as the basis for his evaluation of Petitioner's symptoms. (AR 244-246.)

Petitioner argues the ALJ erroneously considered his limited treatment history when evaluating his symptoms and discrediting his symptom statements, because Petitioner lacked the financial ability to obtain regular medical treatment and there is no support for the ALJ's conclusion that low-cost medical treatment was available to Petitioner. (Dkt. 13.) The Court finds the ALJ's consideration of Petitioner's limited treatment history was error, but harmless.

**A.      Legal Standard**

When evaluating the Petitioner's symptoms, an ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." SSR 16-3p (March 16, 2016), 2016 WL 1119029.[7] An ALJ

may appropriately consider treatment history, or lack thereof, in evaluating a petitioner's

symptom statements. SSR 16-3p at 6-7 (The Commissioner recommends assessing

records of medications, treatments and methods used to alleviate symptoms as well as

medical source opinions and reports regarding claimants treatment and responses to

treatment.).

        "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails

to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for

finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638. However,

"[d]isability benefits may not be denied because of the claimant's failure to obtain

treatment he cannot obtain for lack of funds." *Id*. (quoting *Gamble v. Chater*, 68 F.3d

319, 321 (9th Cir. 1995)).

        The regulations require an ALJ to consider possible reasons a petitioner may

provide for not complying with treatment or seeking treatment consistent with the degree

of his or her complaints. *See* SSR 16-3p.[8] Inability to afford treatment or access low cost

medical services can be a legitimate reason for not seeking medical treatment. *See* SSR

16-3p; *Trevizo*, 871 F.3d at 681 (9th Cir. 2017); *see also Regennitter v. Comm'r Soc. Sec.*

---

[7] SSR 16-3p supersedes SSR96-7p, eliminating the reference to "credibility" and, instead, clarifying that "subjective symptom evaluation is not an examination of an individual's character." *Trevizo*, 871 F.3d at 679 n.5. SSR 16-3p applies to decisions made on or after March 28, 2016, such as the ALJ's decision in this case. (AR 249.)

[8] Petitioner concedes this case is not one concerning denial of benefits due to failure to follow prescribed treatment, which would implicate SSR 82-59 (rescinded and replaced by 18-3p). (Dkt. 13 at 9.) The applicable regulation here is SSR 16-3p.

*Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it").

### B.    The ALJ Erred in Considering Petitioner's Limited Treatment.

In evaluating Petitioner's symptoms, the ALJ concluded Petitioner took no medication, continued to work after a 2008 evaluation of his right arm, and sought no further treatment until 2014. (AR 244.)[9] Petitioner testified at both hearings, however, that he did not seek treatment because he lacked insurance and could not afford treatment. (AR 51, 268-272.)

At the first hearing, Petitioner testified that he cancelled a scheduled physical therapy appointment because he did not have insurance and could not afford the co-pay for the appointments. (AR 50-51.) Petitioner also testified that he did not qualify for the Affordable Healthcare Act but that his wife had found a way to obtain  three months of insurance for him. After three months, however, Petitioner lost his insurance because the

---

[9] The 2008 evaluation, conducted by physician R. Clinton Horan, assessed Petitioner's complaints of loss of strength and occasional numbness in his right arm. The exam showed normal strength and muscle bulk; symmetric reflexes; tingly sensation in digits three and five; and absent Tinel's sign. Dr. Horan concluded Petitioner had mild to moderate carpal tunnel syndrome of the right wrist and ulnar neuropathy (cubital tunnel syndrome) at the elbow. (AR 209.)

premiums went up and he was unable to pay the new rates. (AR 51.)[10] Similarly, at the hearing following remand, Petitioner testified that he did not seek further treatment because of lack of money and insurance. (AR 268, 270, 272.)[11]

The ALJ acknowledged Petitioner's testimony but, nonetheless, found the failure to pursue treatment and financial assistance options undercut Petitioner's testimony concerning the severity of his impairments, stating:

> [T]here is no evidence that [Petitioner] has attempted to avail himself of all available treatment options, especially those at no charge or on a sliding scale. In fact, he might even be eligible for free or low cost health insurance based on his employment status. The limited treatment and failure to seek options for financial assistance in this case are therefore not consistent with the alleged severity of his impairments. His conservative treatment suggests his impairments do not result in significant functional limitation that precludes him from engaging in basic work activity.

(AR 244.) The Court finds the ALJ erred in his consideration of Petitioner's limited treatment history when assessing his symptoms.

The ALJ's speculation regarding whether Petitioner sought or was eligible for free or low cost health insurance has no basis in the record. Despite Petitioner's testimony that he could not afford treatment and had no insurance for a decade or more, the ALJ concluded Petitioner's failure to seek low cost treatment options was inconsistent with the alleged severity of his impairments. (AR 244, 261, 268, 272.) The ALJ's conclusion

---

[10] Petitioner's testimony regarding his cancelled appointment and insurance relates to his visits with Dr. McDonald, which occurred in April, May, and October of 2014. (AR 220, 227.)

[11] The Petitioner testified he did not seek further evaluation of his right wrist and arm after the 2008 study because of lack of money and insurance. (AR 268, 272.) Petitioner also stated carpal tunnel surgery was recommended "some time after" the 2008 study, but that his "insurance fell through" and he could not afford to have any procedures performed. (AR 270.)

is directly contrary to Petitioner's testimony and unsupported in the record.

Further, the ALJ relied on an inaccurate account of Petitioner's testimony concerning his use of pain medication to discredit his symptom statements. (AR 244.) The ALJ's decision states Petitioner "confirmed that he took no medication, prescribed or over-the-counter, for his complaints and that there is no evidence his medical impairments could not be controlled or remedied with medication and appropriate treatment." (AR 243-244.) Petitioner, however, testified at both hearings that he took over-the-counter pain medication as needed, but was not taking, and does not like, prescription pain medication. (AR 51, 261) ("Q: Let's see, I think on your medication list, you take over the counter pain medication? A: Yes, sir. Q: Do you have any prescribed medication? A: No, sir. I don't, other than antibiotics for my teeth.").[12]

For these reasons, the Court finds ALJ erred in his consideration of Petitioner's limited treatment history in evaluating the severity of his symptoms. The ALJ's conclusions are based on inaccurate accounts of Petitioner's testimony and not supported by substantial evidence in the record.

### C.    The ALJ's Error Was Harmless.

The ALJ's error in evaluating the severity of Petitioner's symptoms was harmless, however. The ALJ decision sets forth two other specific, clear, and convincing reasons

---

[12] The Court notes that some reports in the record indicate Petitioner took Aleve and Naproxen over the counter for pain (AR 131, 152, 177, 196, 205, 224, 227, 522, 555, 558), while other records indicate Petitioner reported taking no medications (AR 184, 191, 213). This inconsistency does not change the Court's finding that the ALJ erred in relying on an inaccurate account of Petitioner's testimony regarding his use of pain medication.

for discrediting Petitioner's symptom statements – the objective medical records and activities of daily living – which are supported by substantial evidence. Petitioner has not challenged either of these reasons.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). While the ALJ may not make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence," *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006), the lack of corroborating objective medical evidence is one factor the ALJ may consider in "determining the severity of the claimant's pain" or other symptoms, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Likewise, activities of daily living are a relevant consideration in evaluating a claimant's symptoms. SSR 16-3p.

The Court finds the ALJ's two uncontested reasons for discrediting Petitioner's symptom statements are supported by substantial evidence in the record. *See Batson*, 359 F.3d at 1197. The ALJ pointed to particular medical records that were inconsistent with the level of severity reported by Petitioner. (AR 243-245.) Namely, records showing normal right arm strength and muscle bulk with some mild limitations; some cervical spine tenderness but full range of motion and normal alignment; and fairly good range of motion in the left shoulder. Further, the ALJ found Petitioner was able to able to hold and manipulate small objects based on Petitioner's activities of daily living, including that he was able to wash dishes, cook, drive, and water his wife's garden. (Dkt. 244.)

The objective medical records and activities of daily living provide a sufficient

basis to support the ALJ's evaluation of the severity of Petitioner's symptoms. The ALJ's erroneous consideration of Petitioner's limited treatment history, therefore, was harmless because it was not prejudicial to Petitioner. *See Treichler*, 775 F.3d at 1099. The petition will be denied on this basis.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)    Plaintiff's Petition for Review (Dkt. 1) is **GRANTED IN PART AND DENIED IN PART**.

2)    This action is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)    This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 29, 2020

Honorable Candy W. Dale
United States Magistrate Judge